Omjham, J., delivered the opinion of the court. By the act of the legislature of 1840, slaves are declared to be real estate, and are thereafter to descend and be holden as such. By this act they descend to the heir and not to the administrator, and are to be conveyed and held by the same title as real estate. It was beyond the power of the legislature to change their nature, which was never designed to be done, but it was only designed to change their mode of descent and the title by which they should be held. It was not intended to deprive the owner of the common and appropriate remedies then in use, for the recovery of the possession of such property when unjustly deprived of it, or for the recovery of damages for injuries inflicted upon it. Any other construction would render the act an absurdity. The idea of bringing an action of ejectment for the recovery of the possession of a slave, would be, to say the least, novel and extravagant. In Kentucky, under a statute similar to our own, it was held that detinue was an appropriate remedy in such cases. Cox vs. Robertson’s Ex’rs, 1 Bibb 604. Stamps vs. Beatty, Hard. R. 337. Grimes vs. Grimes adm’rs, 2 Bibb 594. In this case the action of replevin would well be as proper a remedy. The plaintiff proved the possession of the property by Lamber-ton, a delivery by Stewart to Mrs. Gullett while a feme sole, and demanff-of her, and a refusal to deliver, as well as the value of the slave and the value of her hire. In the absence of the plea of property, this proof would have been sufficient to justify a recovery under the general issue of non detinet. The only remaining question is, whether the proof showed the title to be in the plaintiff or .in Saffold’s heirs. The plaintiff produced a bill of sale, upon the trial, conveying the :slave to his wife, while sole, by John Saffold, for thq consideration .of six hundred dollars, containing a reservation to the following .effect: “only I, John Saffold, hold the said Milla during my life or pleasure.” The execution and delivery of the bill of sale, as well as the delivery of the negro to Mrs. Lamberton, were proven by one of the subscribing witnesses. What effect is to be given to that reservation? Is it of such a character as wholly to defeat the grant? Or is it repugnant to the preceding part of the instrument and therefore void? Or shall effect be given both to the reservation and the grant? The instrument cannot be considered or construed as a gift, for it" does not purport to be such; nor is it a donatio causa mortis, not being a death-bed disposition of property. It can only be considered as a grant made upon a valuable consideration, expressed up,on its face. The parties are estopped to deny the consideration thus expressed. Pewet & Wife vs. The Monson and Burnfield Manufacturing Company, 3 Mason C.C.R. 347. And we are therefore not authorized to infer that no consideration was actually paid. It is not correct that because Mrs. Lamberton was a minor at the date of the contract, she was incapable of contracting. An infant may contract, but may avail himself of his non-age if sued upon the contract, except in certain cases, or on arriving at maturity, may disaffirm the contract. His contracts in most cases are voidable, not void, and infancy being a personal privilege designed by the humanity of the law to protect him from the impositions to which his want of age and experience might otherwise subject him, ;he alone can avail himself of the privilege. It is a rule of construction, that it ought to be made upon the entire deed; not upon any particular part of it; and such construction should be given that, if possible, every part of the deed may be operative; but if the deed cannot operate in the manner intended by the parties, such a construction should be given to it that it may operate in some other manner. Jackson ex Dem. Troup. vs. Blodget, 16 J. R. 172. If the law permits a sale of personal property to take effect in futuro, then a construction may be placed upon this deed which will render every part of it operative, according to the intention of the parties as expressed in it. By the rules of the ancient common law there could be no future property to take place in expectancy, created in personal goods and chattels, except by last. wills and testaments. “But .now,” says Sir William Blackstone, in his Commentaries, Vol. 2, 398', “that distinction is disregarded; and, therefore, if a man; either by deed or will, limits his books or furniture to A for life, with remainder over to B, this remainder is good.” An estate of freehold could not be created by common law to commence in futuro, because no freehold could pass without livery of seizin, which must operate immediately or not all. 2 Bl. Com. 166: but in this country where conveyances of real estate, are by deed, and livery of seizin has never been 'adopted; such future estate in lands may be conveyed without a precedent particular estate to support it. Rogers vs. Eagle Fire Co., of New York, 9 Wendell 611. In the case of Hynson vs. Terry, 1 Ark. Rep. 83, this court held that “in our country-since estates in tail have'been. abolished, there is not the slightest difference between persbnal and real estates, except so far as they may be regulated by the particular statutes of the several States upon the subject; so that personal estate, as it now stands, may pass by deed or other instrument in writing duly acknowledged and recorded with a condition or reservation annexed, provided the limitation be not too' remote or uncertain to be valid, or not inconsistent with the gift.” If such limitations and reservations can be made in a deed of gift, it is equally true that they may be contained in a deed executed for á valuable consideration. Where a mother conveyed a house and lot to two sons in fee.. and took back an instrument in writing, of the same date¿ executed by one of the grantees under seal, declaring the intention of the parties to be that the grantor should hold the property and receive the rents and profits thereof during her natural life, and covenanting to abide such agreement, it was held that the deed and the instrument were parts of the same contract, and that the grantor had an estate for life in the premises. Jackson vs. McKenney, 3 Wend. 233. And so in the case of Jackson ex Dem. Staats vs. Staats, 11 John. R. 337, it was held that a deed from A to B, habendum to A for life and after his death to B, his heirs or assigns forever, is a valid conveyance under the statute of uses, as a covenant by the grantor to stand seized to his own use during life, and after his death to the use of the grantee and his heirs. And so in the case of Jackson ex Dem. Wood vs. Swart, 20 John. R. 85, in a conveyance to a son, the grantor and his wife reserved to themselves the use of the premises during their natural lives, it was held valid and effectual as a covenant to stand seized to the use of the grantor himself during his life, and after his death to the use of his wife for life. Real estate and personalty being upon the same footing as to limitations and reservations contained in conveyances, as decided by this court in Hynson vs. Terry, it follows as a necessary consequence, that a sale of personal property may be made, a future estate created in the property, with the right of possession retained in the vendor for life, or a shorter period, in the samebnanner and to the same effect as in real estate. This view of the question iii this case will give that effect to the intention of the parties, which the language of the deed or bill of sale imports — the immediate transfer of the right of property with the right of future possession, the vendor retaining to himself the possession and use during his natural life or pleasure. The case of Caines & Wife vs. Marly, 2 Yer. Rep. 582, and authorities there cited are conclusive upon this question. But if the deed cannot so operate as to give effect to the entire intention of the parties, to decide that the reservation in the deed destroys its effect as a convayance would be at variance with all the rules of construction by which courts of law are governed in such cases.. The deed should be so construed that it may operate in some manner, and the reservation, being repugnant, should be disregarded and held as void. If in a deed there be two clauses, so totally repugnant to each other, that they cannot stand together, the first shall be received and the latter rejected. 2 Black. Com. 381 But, as before stated, such is not the fact in this case. It appears from the evidence that Saffold never asserted any claim to the possession of the slave in his life time under the reserva* tion contained in the bill of sale, but delivered possession of her with the bill of sale, and after the marriage of Lamberton, upon his removal to his own farm, he carried the negro with him without opposition, and retained undisputed possession of her until Saffold's death. So the right reserved was in fact surrendered by the deliv* ery of the negro, and Lamberton’s title became full, ample, and complete.' If the bill of sale were left wholly out of consideration, yet a suf“ ficient’ title was established in Lamberton upon the trial to warrant the finding of the circuit court. Martin proves that Lamberton and his wife were married in 1839, and that upon their removal to his own farm, they carried the girl, Milla, with them, and kept her until'sometime in February 1842, and that old man Saffold died in September, 1841. The same facts are proved by Tucker. During this whole time his right to the negro was never questioned by his father-in-law, during his life time, nor by his heirs after his death, and John F. Saffold, one of the heirs, in whose right the defence is made, upon being introduced as a witness for the appellants, admitted the validity of Lamberton’s title, by stating that he made the demand for him. The delivery of the slave to Mrs. Lamberton, the subsequent and undisputed possession by her husband after marriage, with the acquiescence of her father during his life, and of his heirs after his death, are circumstances affording strong, if not conclusive evidence of title. Farrell vs. Perry, 1 Haywood Rep. 2. Carter's Exrs. vs. Rutland, id. 97. Ferguson vs. Alcorn et al., 1 B. Mon. 160. Under the facts, as presented by the record, to permit the plain* tiffs to defeat the recovery of Lamberton under the pretence that the slave in question belongs to the heirs of Saffold, dec’d, would be to defeat the plain and palpable ends of justice, and would justly render the judicial tribunals of the State obnoxious to the charge of being engines of fraud and oppression, instead of forums to which every man may confidently appeal for redress, when injured in his reputation, person, or estate. Such a pretence is entitled to no favor. The defendants have no title or claim to the property, and set up none, but are litigating the claims of persons, who, so far from, setting up such claims in person, one of them at least, as a witness in open court, substantially disavows any such claim or title. And in fact, he appears to have been the active agent for Lamberton in- the whole transaction; he pursued the slave when run off by Stewart, from- Independence county, and left at Mrs. Gray’s, (now Mrs. Gullett), -made a demand-of her for the negro in Lamberton’s name, and failing to obtain possession, made the affidavit to procure the issuance of the writ of replevin, and joined in the replevin bond to procure the execution of the writ. It would be strange, indeed, if a recovery could be defeated- under color of the claim of a third person, who has gone so far as agent and witness to disavow all such claim upon the record. If Lamberton ought not to recover in this case, it is difficult to-conceive one which a party would.be justified in asserting in a court of law. The circuit court also properly excluded the deposition ef Byers:but even if it had been done improperly, his deposition could not, and should not have altered or changed the result of the trial. The deposition contains nothing but the statements of old-man Saflold, in his life time, relative to a bill of sale, and whether made before or a-fter the execution of the bill of sale produced to prove title in this case, are wholly inadmissible, as not constituting a part of the res gesta. The title of a purchaser cannot be impaired or in anywise affected by the admissions or mere statements of the vendor in his absence. Much less can it be affected by the vendor subsequently declaring, in the absence of the purchaser, that it was executed without consideration, when a valuable consideration is expressed in the deed, and which is conclusive upon the parties for all the purposes of its own efficacy. Viewing the case in every possible aspect, we can see no ground whatever for disturbing the decision and judgment of the circuit court, but the strongest and most substantial reasons why the judgment should be affirmed.